IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JIMMIE HUNT,** | )<br>) |
| *Plaintiff,* | )<br>) |
| vs. | )<br>) |
| | ) **CIVIL ACTION NO.** |
| **ELECTRIC POWER BOARD OF METROPOLITAN NASHVILLE AND DAVIDSON COUNTY d/b/a NASHVILLE ELECTRIC SERVICE,** | )<br>) **JURY DEMAND**<br>)<br>)<br>) |
| *Defendant.* | )<br>) |

## COMPLAINT

Plaintiff, JIMMIE HUNT (hereinafter referred to as "Plaintiff" or "Hunt"), files his Complaint against Defendant, ELECTRIC POWER BOARD OF METROPOLITAN NASHVILLE AND DAVIDSON COUNTY d/b/a NASHVILLE ELECTRIC SERVICE (hereinafter referred to as "Defendant" or "NES"), and alleges as follows:

### NATURE OF COMPLAINT

1. This action is brought by Plaintiff against Defendant for discrimination against him because of his race, color, and origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. ("Title VII"), The Civil Rights Act of 1991, 42 U.S.C. §§ 1981, and 1983 and The Tennessee Human Rights Act ("THRA") Tenn. Code Ann. § 4-21-101, *et seq.*

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §1331, §1343(4), and §1367 as the Plaintiff brings this action for damages under Title VII, 42 U.S.C. §2000 et. seq., as amended, 42 U.S.C. §1981, §1983 and THRA Tenn. Code Ann. § 4-21-101, *et seq*.

3. The venue is proper in the Middle District of Tennessee, Nashville, Division pursuant to under 28 U.S.C. 1391 as the alleged violations occurred in this judicial district.

## PARTIES

4. Plaintiff is an African American male born in September 6, 1965.

5. Plaintiff is a member of a protected class based on race and color within the meaning of Title VII and 42 U.S.C. §§ 1981 and 1983.

6. Plaintiff is a resident of Tennessee. At all times material to this action, Plaintiff was and is an employee of Defendant NES as defined in 42 U.S.C. § 2000 et seq and 42 U.S.C. §§ 1981 and 1983.

7. Defendant NES is a quasi-governmental entity doing business in the state of Tennessee.

8. NES is an employer as defined by 42 U.S.C. §§ 1981, §1983, and 2000e(b), employing more than 15 individuals and under THRA § 4-21-102(5) and (14).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff has fulfilled all conditions necessary to the institution of this action under Title VII of the Civil Rights act of 1964, as amended and THRA.

10. Plaintiff filed a discrimination Charge against Defendant NES with the Tennessee got it closed due to receiving a Right to Sue from the United States Equal Employment Opportunity Commission ("EEOC").

11. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant for discrimination based on Race, Color, Origin, and Retaliation (Charge No.: 494-2022-00650).

12. On March 9, 2023, a Notice of Right to Sue was issued from the EEOC to the Plaintiff. A true and correct copy of the Notice of Right to Sue is attached hereto as **Exhibit "A"** and fully incorporated herein by reference.

13. Accordingly, this lawsuit is properly and timely filed within ninety (90) days of issuance of Plaintiff's Notice of Right to Sue Letter by EEOC.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

14. Plaintiff was hired and has been working with NES for approximately twenty-five (25) years.

15. Plaintiff, over these years, has worked in different areas of NES, i.e., he worked as a Lineman, Working Foreman in Transmission and Distribution Section and Safety Supervisor.

16. Before being employed by NES, the Plaintiff worked for another utility company and his prior experience was deemed relevant at NES.

17. The Plaintiff is the only African American Safety Supervisor at NES.

18. Plaintiff performed his duties and fulfilled his responsibilities in a satisfactory manner. Despite Plaintiff's long tenure and satisfactory service, he was passed over for promotions on numerous occasions like other qualified African American NES employees.

19. Since the day of his employment, Plaintiff has been subject to ongoing harassment, retaliation, racial discrimination, and a hostile work environment by his supervisors and other Caucasian employees of NES. At all times relevant to this lawsuit, Plaintiff was subjected to racist comments, racist displays, and an overall pervasive environment.

20. Plaintiff directly heard and/or is aware of NES Caucasian coworkers and supervisors saying racially inflammatory words such as "NIGGER." Plaintiff directly heard and/or is aware of NES Caucasian coworkers and supervisors making comments calling African Americans "NIGGER," "BOY,"

21. Use of racist epithets, and slurs is a common practice in the NES environment.

22. Plaintiff is aware that Superintendent Ron Jennings called African American NES employee, William Heath, racial slurs.

23. Plaintiff reported the racist behavior to Human Resources, but no corrective action was taken.

24. Plaintiff alleges that NES personnel changed tests administered to African American applicants, altered job descriptions in such a way to intentionally exclude African American candidates, denied jobs, removed job postings and outright gave jobs to less qualified Caucasian employees all to exclude African American candidates.

25. The Plaintiff also observed NES hold job postings open for close to a year in order to allow unqualified Caucasian employees to "qualify" for the particular position while NES removed open job postings to prevent qualified African American employees from obtaining such positions.

26. The Plaintiff alleges that these practices are common at NES.

27. The Plaintiff applied to the position of Field Superintendent on approximately five occasions but was denied the position.

28. Less qualified Caucasian employees were given the positions over the Plaintiff.

29. Various tactics were employed to prevent the Plaintiff from obtaining the position of Field Superintendent, including changing the job description in such a way to hurt the Plaintiff and favor lesser qualified Caucasian employees.

30. For example, the job description and qualifications of Safety and Employee Development Manager were altered to require an Engineering Degree in an attempt to prevent the Plaintiff from obtaining the job.

31. The alteration of the job qualifications benefited a lesser qualified Caucasian employee, Sara Elliott, to the detriment of the Plaintiff.

32. Plaintiff believes that he was not promoted because of his race and color.

33. Of note, the Plaintiff was not even deemed to "certify" for the position in order to apply but had performed the additional job duties of the position that was given to Sara Elliott for approximately two years with no additional compensation.

34. Plaintiff also reported racist and discriminatory behavior committed by NES employees against other African American employees, but no corrective action was taken.

35. The Plaintiff also observed discriminatory practices in the way that African American NES employees are rated at NES.

36. The Plaintiff personally experienced being rated unfairly in comparison to his Caucasian peers.

37. At NES, performance evaluations play a role in the certification and promotion process.

38. On a particular performance evaluation, the Plaintiff was rated "Good." Plaintiff's supervisor could not explain why he rated the Plaintiff, the only African American, with only a "Good."

39. When the Plaintiff reported the issue to, then, Vice-President of Human Resources, Herbert DeBerry, his rating was changed to "Very Good", but NES took no action to uncover why the Plaintiff and other African American NES employees, like him, were routinely rated lower than their peers.

40. The Plaintiff expressed to NES Human Resources personnel, including Herbert DeBerry and Camille Steward, that he felt that many African American NES employees would not voice concerns about their performance evaluations due to fear of retaliation from management. No meaningful action was taken by NES.

41. The Plaintiff also voiced concerns about the certification process, the overall promotion process and management altering job qualifications in order to select Caucasian NES employees.

42. The Plaintiff voiced said concerns to Vaughn Charles, Herbert DeBerry, Camille Steward, Tina Demoss and Decosta Jenkins.

43. Following Plaintiff's continued mistreatment, Plaintiff learned of additional African American NES employees experiencing similar discriminatory and hostile treatment at NES.

44. Plaintiff spoke with those African American NES employees regarding their experiences and instances of discrimination.

45. Plaintiff reported racist and discriminatory behavior committed against himself and other African American NES employees including but not limited to William Heath, Thomas Caruthers, Walter Clark, Marvin Sain, Jimmie Hunt, and Tracy Gooch but no meaningful investigations or corrective action was taken.

46. The Plaintiff has had the disturbing task of addressing racist displays made on NES property.

47. The Plaintiff received a report of a noose being displayed on NES property in a way that was racist in nature.

48. The Plaintiff had the undesirable task of removing the noose from NES property.

49. The Plaintiff reported the incident to his supervisor, Sara Elliott, the Vice-President of Human Resources, Herbert DeBerry, and Chief Executive Officer Decosta Jenkins.

50. Knowledge of the display circulated around NES employees.

51. Many African American NES employees, including the Plaintiff, were deeply affected and disturbed as it is not the first noose display placed on NES property in an employee-only area.

52. The Plaintiff gave the noose to Herbert DeBerry.

53. The Plaintiff and the NES Human Resources employee reported the incident to NES management, but no corrective action was taken.

54. The Plaintiff also observed discriminatory practices in the way that African American NES employees are disciplined at NES.

55. The Plaintiff observed that African American NES employees are punished more often and more harshly than their Caucasian counterparts for the same and/or similar behavior.

56. The Plaintiff observed an incident involving African American NES employee, Walter Clark.

57. The Plaintiff observed that disciplining manager Stephen Clark and the Caucasian safety supervisors were working together to "brainstorm" all of the infractions that could be used to "write up" Walter Clark.

58. The Plaintiff expressed his concerns to those safety supervisors, giving examples of the difference in discipline for Caucasian employees with similar infractions.

59. Nonetheless, the Caucasian safety supervisors and Stephen Clark proceeded to "over discipline" Walter Clark while failing to discipline Caucasian employees that were involved in the incident that should have been written up under the circumstances and according to NES policy.

60. Seeing no corrective action, the Plaintiff informed his supervisor, Sara Elliott, of the difference in treatment.

61. So, yet again, the Plaintiff complained of the racist and discriminatory treatment, but no corrective action was taken.

62. Plaintiff's pleas for help from management and NES Human Resources remain unaddressed as of the drafting of the present Complaint.

63. The hostile environment at NES is continuous and ongoing. Every time Plaintiff suffered racial comments and discrimination during his employment, he filed his grievances or reported the incidents to his supervisors and/or managers, but everything was in vain as no corrective action has ever been taken to resolve such grievances.

64. On countless occasions, Plaintiff faced racial discrimination at NES, which includes but not limited to racial gestures, e.g., a noose hanging at work (reported to and reported by Plaintiff), constantly being overlooked for jobs due to his race even though he was more qualified than his fellow white coworkers, unfair treatment by supervisors as well as manipulation of the performance appraisal system and grades, being graded differently because of his race, and coworkers being disciplined more harshly due to race. A true and correct copy of the photograph

depicting the noose viewed by Plaintiff on NES property is attached hereto as **Exhibit "B"** and fully incorporated herein by reference.

65. Throughout his employment at the NES, Plaintiff has experienced and witnessed African American employees not being given opportunities for promotion and advancement equal to white employees.

66. There is no dearth of examples of NES's discrimination based on race, color, and national origin. Most recently, on January 9, 2023, NES Operations Manager Ty Jones changed his email profile to a "Not Equal" '≠' symbol. The use of this symbol is an attempt to claim that different races are not equal to each other and to imply that whites are superior to blacks. A true and correct copy of Ty Jones' email profile and this hate symbol's description is attached hereto as **Exhibit "C"** and fully incorporated herein by reference. Despite reports of Jones' use of this symbol directly to NES Human Resources and legal counsel, no corrective action has been taken.

67. Plaintiff has been adversely affected by the challenged practice and pattern of racial discrimination detailed in this Complaint, including Defendant NES's subjective selection and discipline policies, practices and procedures, and unequal terms and conditions of employment, which have prevented Plaintiff from advancing into higher and better paying positions for which he was qualified, and have deprived him of the opportunity to work in an integrated environment in which African-American employees hold higher-level positions. Plaintiff has been subjected to a racially hostile working environment.

68. As a result of Defendant's acts or conduct, Plaintiff has experienced pain and suffering, racism, stress, anxiety, unfair treatment and bullying, and receiving unfair ratings.

69. Plaintiff has been deprived of employment opportunities and has otherwise been subjected to Defendant's intentional discrimination regarding his rights under Title VII and 42

9
Complaint
Case 3:23-cv-00513   Document 1   Filed 05/20/23   Page 9 of 16 PageID #: 9

U.S.C. §§ 1981 and 1983, which has caused Plaintiff to suffer economic losses, including lost wages and benefits, interest, attorney fees and costs, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and damages in violation of Title VII and 42 U.S.C. §§ 1981 and 1983 prohibiting discriminatory and retaliatory treatment.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Intentional Race Discrimination
### (§1983 for violations of §1981 and Title VII)

70. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–69 with the same force and effect as though fully set forth herein.

71. Plaintiff has been subjected to racial discrimination in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, including, but not limited to, a pattern and practice of intentional discrimination and a battery of policies, practices, and procedures having unlawful, disparate impact on his employment opportunities. Defendant NES follows a policy and practice of restricting the employment opportunities of African American employees such as Plaintiff to lower job classifications and compensation levels. The means of accomplishing such racial discrimination include, but are not limited to, the NES's selection and promotional procedures, unequal terms and conditions of employment, and a history of tolerating and encouraging a racially hostile working environment.

72. As a protected class member, Plaintiff was discriminated against when he applied for the Field Superintendent position and was graded lower by NES management than other similarly situated NES's Caucasian employees.

73. Plaintiff was subjected to intentional discrimination by NES when he was denied a promotion even though he was qualified for the job; in contrast, Sara Elliott, a Caucasian coworker, was promoted over the Plaintiff.

74. Race is a motivating factor in NES's rejection of Plaintiff for the position.

75. NES intentionally discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on the basis of race in violation of Title VII and §1981.

76. NES treated Plaintiff differently than similarly situated Caucasian employees.

77. Due to Defendant's disparate treatment, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

78. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

## SECOND CAUSE OF ACTION
### Racial Harassment – Hostile Work Environment
### (§1983 for violations of §1981 and Title VII)

79. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–69 with the same force and effect as though fully set forth herein.

80. Plaintiff deserves a fair work environment free of racial animus.

81. Plaintiff was subjected to a hostile work environment within the meaning of the Title VII of the Civil Rights Act of 1964, Section 1981 and 1983 due to harassment by NES employees in administration, managerial positions, and coworkers.

82. Plaintiff was subjected to racially offensive, severe, or pervasive jokes, insults, and slurs on various occasions by NES management and other Caucasian employees.

83. Plaintiff was the victim of constant bullying and racial slurs such as being called "Nigger" by NES Caucasian employee(s).

84. Plaintiff was subjected to and forced to endure harassment at NES, resulting in a hostile work environment.

85. Plaintiff did not welcome the harassment he endured.

86. Plaintiff found the harassment to be humiliating and intimidating, and the harassment unreasonably interfered with Plaintiff's work performance by creating an intimidating, hostile, or offensive environment.

87. The NES failed to take prompt remedial action to stop the harassment Plaintiff endured.

88. NES is liable for a racially hostile work environment under Title VII, Section 1981, which results from discriminatory practices, comments, and harassment of Plaintiff.

89. Due to such discriminatory acts, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

90. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

**THIRD CAUSE OF ACTION**
**Racial Discrimination**
**(Tennessee Human Rights Act § 4-21-101, Et Seq.)**

91. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–69 with the same force and effect as though fully set forth herein.

92. Tennessee Human Rights Act § 4-21-101 (a)(1) "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972……"

93. NES is an employer under THRA § 4-21-102(5) in that it is a business with eight or more employees doing business in the State of Tennessee.

94. Plaintiff has been subjected to racial discrimination in violation of the Tennessee Human Rights Act. "Discriminatory practices" means any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of race, creed, color, religion, sex, age or national origin. THRA § 4-21-102(4).

95. Plaintiff was subjected to racial discrimination by NES's Caucasian Supervisors.

96. NES is liable under Tennessee Human Rights Act for racial discrimination resulting from the discriminatory practices of its employees.

97. Due to such discriminatory acts, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

98. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

### FOURTH CAUSE OF ACTION
### Negligence

99. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–69 with the same force and effect as though fully set forth herein.

100. NES owed a duty to Plaintiff to protect him from employment discrimination and harm while at the workplace, a duty to properly supervise its employees, and correct ongoing harassment at the workplace.

101. NES had actual and constructive knowledge of the multiple incidents of racism, harassment, and racist displays and language being used by NES employees at work, as Plaintiff time to time, reported his grievance to his Supervisors and Managers. However, NES failed to take any corrective action to protect Plaintiff and other similarly situated employees from such racial discrimination and harassment.

102. NES engaged in, condoned, and ratified harassing and discriminatory conduct of its employees.

103. NES was negligent in failing to properly supervise its employees, in failing to protect Plaintiff from harm and employment discrimination at the workplace, and in failing to prevent ongoing harassment in violation of Title VII, Section 1981, and THRA.

104. NES's actions and/or inactions injured Plaintiff.

105. Due to NES's failure to prevent racial discrimination and harassment at work, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

106. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

**PRAYER FOR RELIEF**

WHEREFORE PREMISES CONSIDERED, Plaintiff, JIMMIE HUNT, prays:

(i) That the Defendant be served and required to answer within the time allowed by law;

(ii) That a jury trial be held and a judgment entered in his favor;

(iii) That Plaintiff be granted a judgment against NES for the sum of money determined by the jury to be sufficient to compensate him for the damages complained of herein, including but not limited to embarrassment and humiliation, emotional pain suffering and mental anguish, stress, depression, and anxiety loss of enjoyment of life under THRA;

(iv) That Plaintiff be granted a judgment against NES for punitive damages and compensatory damages under Title VII and 42 U.S.C. §§ 1981 and 1983;

(v) The Plaintiff be awarded "back pay" damages to be determined by the jury under Section 1981 and 1983;

(vi) That Plaintiff be granted a judgment against NES for reasonable attorney fees and costs incurred in bringing this action;

(vii) Prejudgment interest and, if applicable, post-judgment interest; and;

(viii) Such other and further legal or equitable relief to which Plaintiff may justly be entitled.

Respectfully submitted,

/s/Ashley L. Upkins
ASHLEY L. UPKINS, ESQ.
TN BPR No. 033598
The Cochran Firm - Nashville, LLC
1720 West End Avenue, Suite 320
Nashville, TN 37203
Office (615) 678-6278

15
Complaint
Case 3:23-cv-00513   Document 1   Filed 05/20/23   Page 15 of 16 PageID #: 15

aupkins@cochranfirmnashville.com
*Attorney for Plaintiff*
Jimmie Hunt