**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| JIMMIE HUNT,<br><br>      **Plaintiff,**<br><br>**vs.**<br><br>ELECTRIC POWER BOARD OF METROPOLITAN NASHVILLE AND DAVIDSON COUNTY d/b/a NASHVILLE ELECTRIC SERVICE,<br><br>      **Defendant.** | **Case No. 3:23-CV-00513**<br>**Judge Aleta A. Trauger**<br><br>**JURY DEMAND** |

<u>**INITIAL CASE MANAGEMENT ORDER**</u>

**A.** **JURISDICTION:** The court has jurisdiction pursuant to 28 U.S.C. §1331, §1343(4), and §1367.

**B.** **BRIEF THEORIES OF THE PARTIES:**

**1)** **PLAINTIFF**: Jimmie Hunt ("Mr. Hunt") is an African American male, age 58, was employed by NES for over 25 years. NES engaged in negligence, racial discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. ("Title VII"), The Civil Rights Act of 1991, 42 U.S.C. §§ 1981, and 1983 and The Tennessee Human Rights Act ("THRA") Tenn. Code Ann. § 4-21-101, et seq. Despite his long tenure and dedication to NES, Mr. Hunt experienced blatant and continuous racism and discriminatory promotion practices in order to promote the less qualified Caucasian candidates over Mr. Hunt. Mr. Hunt has been the victim of constant bullying, hearing other African American NES workers being called "Nigger" and had to observe and remove racist displays such as the most recent noose on NES property. Mr. Hunt was treated differently than similarly situated Caucasian employees. Mr. Hunt was retaliated against for reporting such practices to appropriate

NES personnel. Mr. Hunt's experiences show a pattern of racism, harassment and illegal exclusion within NES resulting in a hostile work environment. Mr. Hunt satisfied all conditions precedent to filing this suit and his claims were filed in a timely manner. Mr. Hunt should prevail based on the facts and the law. Mr. Hunt should be awarded lost wages, lost benefits, lost earning potential, lost retirement benefits, compensatory damages and/or punitive damages, attorneys' fees, expenses, prejudgment interest and post judgment interest.

**2)** **DEFENDANTS:** Defendant Electric Power Board of Metropolitan Nashville and Davidson County, using the service name Nashville Electric Service ("NES" or "Defendant") denies any and all allegations of wrongdoing and liability. Plaintiff was not subject to race harassment or discrimination in any manner with respect to his employment with NES. To date, he remains employed by NES and all workplace complaints made by him have been investigated and/or addressed by NES.

As an initial note, Plaintiff's claim for negligence is based solely upon the same factual allegations of race discrimination and/or race harassment asserted by Plaintiff and are thus preempted by the Tennessee Workers Compensation Act, the Tennessee Human Rights Act ("THRA") and Title VII.

Further, all claims for punitive damages against NES are preempted as it is a governmental entity. Additionally, Plaintiff cannot bring a cause of action against NES under Section 1981 as it is a municipality and Plaintiff can point to no municipal policy or custom that facilitated this alleged discrimination.

Also, many of the acts Plaintiff alleges amount to discrimination and/or harassment are barred by the applicable statutes of limitations. Plaintiff filed his EEOC charge on March 29, 2022. Thus, any alleged conduct that took place prior to June 2, 2021 is untimely with respect to

Plaintiff's Title VII claims. Plaintiff filed his Complaint on May 20, 2023. Thus, any alleged conduct that took place prior to May 20, 2022, is untimely with respect to Plaintiff's THRA and Section 1983 claims[1] and any alleged conduct that took place prior to May 20, 2019 is untimely with respect to Plaintiff's Section 1983 claims.

As to Plaintiff's allegations that he was passed over for promotions to the "Field Superintendent" position and "Safety Manager" positions because of his race, Plaintiff's claims of discrimination fail because the positions were filled by individuals more qualified than Plaintiff. While Plaintiff may believe his seniority and work ethic render him qualified for these positions, his self-serving personal assessment of himself does not override NES's promotion procedures. For the Safety Manager position, Plaintiff did not have an Engineering degree, which rendered him unqualified to fill the role. For the position of Superintendent, Plaintiff had minimal experience supervising lineman work in comparison to other candidates as he had been in the Safety Department for the past eight years.

As to Plaintiff's allegation that NES personnel changed tests administered to African American applicants and altered job descriptions and postings in ways to exclude African American candidates, these claims fail as Plaintiff is not able to point to a similarly situated employee outside of his protected class who was not similarly affected by these decisions. Further, even if Plaintiff could point to a similarly situated individual who was not affected, his claim would still fail because NES had legitimate, non-discriminatory reasons for every decision it made relating to the altering of job qualifications/descriptions, posting of available positions, and tests used during the interview stages for each promotion decision.

---

[1] There is no federal statute of limitations for § 1983 claims. When federal law is silent on an issue in a federal court § 1983 action, 42 U.S.C. § 1988(a) requires the federal court to borrow state law on the issue, provided it is consistent with the policies underlying § 1983

As to Plaintiff's claim that he was subjected to race discrimination because he received a performance rating of "Good", reported the issue to Herbert DeBerry and his rating was changed to "Very Good", this claim fails because he suffered no adverse action where the issue was immediately investigated and corrected. Further, Plaintiff was not the only individual who had an issue with his performance rating during this time period as the individual grading for the period had just recently taken the position when the performance ratings were given out. Upon discovering this issue, Herbert DeBerry made multiple corrections to performance ratings for that time period, including those of Caucasian NES employees.

As to Plaintiff's claim he was subject to racial harassment because he was aware that Ron Jennings allegedly called William Heath a racial slur, this claim fails as Plaintiff does not have standing to bring a claim of race harassment on behalf of another employee.[2] Even if he did, this claim would still fail as it is an isolated incident that does not rise to the standard of severe or pervasive required to support a race harassment claim.

As to Plaintiff's claim that he was subject to racial harassment because he was asked to retrieve the noose located at the Donelson Service center in May of 2020, this claim fails because the task he was asked to do in retrieving the item fell squarely within his managerial capacity as safety manager. Further, upon his report of the noose at the location and being asked to retrieve it, Plaintiff never objected, complained or expressed any issue with retrieving the item. NES also immediately investigated the complaints related to this incident and responded with corrective action. NES's CEO issued a companywide statement providing that the presence of this item on

---

[2] As to Plaintiff's general claims that he was subject to harassment and a hostile work environment as NES because he had heard from other co-workers or was aware that other Caucasian employees had made racially inappropriate comments to African American employees, these allegations cannot establish a race harassment claim as Plaintiff does not have standing to bring claims on behalf of comments that other employees heard when he himself has not experienced these statements.

company property was unacceptable and re-iterated the company harassment policy. Additionally, NES followed up with company-wide training relating to its mutual respect and anti-harassment policies and protocols to prevent this type of incident from occurring again.

Plaintiff was not subject to any race-based discrimination or severe or pervasive harassment. NES has policies and procedures in place to address and respond to any complaints of racial discrimination or harassment. Throughout his entire employment with NES, Plaintiff has never made any complaints of racial discrimination or harassment under NES's Mutual Respect Policy or Grievance Process while at NES. Plaintiff remains employed and NES continues to investigate each time any employee actually reports alleged harassment. NES has legitimate non-discriminatory reasons for its promotion decisions – NES has promoted the most qualified candidates. Plaintiff's claims fail and should be dismissed.

Finally, while Plaintiff's theory of the case references retaliation, his Complaint does not include a separate count or cause of action for retaliation.

C. **ISSUES RESOLVED:** Jurisdiction and venue.

D. **ISSUES STILL IN DISPUTE:** Liability and damages.

E. **INITIAL DISCLOSURES:** The parties shall exchange initial disclosures pursuant to FED. R. CIV. P. 26(a)(1) on or before **December 11, 2023**. [3]

F. **CASE RESOLUTION PLAN AND JOINT ADR REPORT:** The parties shall file a joint Alternative Dispute Resolution ("ADR") report on or before **June 14, 2024**.

The joint report shall state whether the parties believe ADR might assist in resolution of the case. If a judicial settlement conference is requested in either a joint report or separately, the parties shall also state (i) the reasons why mediation is not feasible; (ii) their proposed timing for

---

[3] The parties are requesting additional time to serve initial disclosures due to the Thanksgiving holiday.

scheduling of the settlement conference; and (iii) any preference of a particular Magistrate Judge to conduct the settlement conference.

G.      **DISCOVERY:** The parties shall complete all written discovery on or before **May 31, 2024** discovery and depose all fact witnesses on or before **August 23, 2024**. Discovery is not stayed during dispositive motions, unless ordered by the court. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

H.      **MOTIONS TO AMEND:** The parties shall file all Motions to Amend on or before **December 13, 2023**.

I.      **DISCLOSURE OF EXPERTS:** The Plaintiff shall identify and disclose all expert witnesses and expert reports on or before **April 29, 2024**. The defendants shall identify and disclose all expert witnesses and reports on or before **July 8, 2024**.

J.      **DEPOSITIONS OF EXPERT WITNESSES:** The parties shall depose all expert witnesses on or before **September 23, 2024**.

K.      **DISPOSITIVE MOTIONS:** The parties shall file all dispositive motions on or before **November 15, 2024**. Responses to dispositive motions shall be filed within twenty-one (21) days after the filing of the motion. Optional replies may be filed within ten (10) days after the filing of the response. Briefs shall not exceed 20 pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the court.

**L.     ELECTRONIC DISCOVERY:** The parties do not anticipate significant electronic discovery. In the event that the parties must conduct electronic discovery, the parties anticipate reaching an agreement on how to proceed. Administrative Order No. 174 therefore, need not apply to this case. However, in absence of an agreement, the default standards

**M.     ESTIMATED TRIAL TIME:** The parties expect the trial to last approximately <u>3-4</u> days.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
U.S. District Judge


APPROVED FOR ENTRY:


*/s/   Ashley L. Upkins, Esq.*
Ashley L. Upkins, Esq. (#033598)
The Cochran Firm – Nashville, LLC
1720 West End Avenue, Suite 320
Nashville, TN 37203
(615) 678-6278
aupkins@cochranfirmnashville.com
*Attorney for Plaintiff*

*/s/    Brian C. Winfrey*
Brian Christopher Winfrey (#025766)
The Winfrey Firm/Morgan & Morgan
2021 Richard Jones Rd, Ste 310A
Nashville, TN 37215
(615) 601 1276
brian@thewinfreyfirm.com
*Attorney for Plaintiff*


*/s/  Mary Dohner-Smith*
Mary Dohner-Smith TN BPR No. 21451
mdohner@constangy.com
William A. Blue, Jr. TN BPR No. 010378

zblue@constangy.com
Jacob A. Freeland TN BPR No. 21451
jfreeland@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
750 Old Hickory Boulevard
Suite 2-260
Brentwood, TN  37027
PH:  615.340.3800
*Counsel for Defendant*